ADDISON,
*January,*
1841.

Phelps
*v.*
Slades.

</div>

Judgment of county court affirmed.

---

SAMUEL S. PHELPS *v.* WM. SLADE AND NORMAN B. SLADE.

If an execution be irregularly issued, and actually delivered to an officer to execute, the debtor may take measures, by *audita querela*, to supercede the same.

That the execution issued, by the *mistake* of the clerk or attorney, is no defence to the *audita querela*.

After praying out the *audita querela*, under such circumstances, he is well justified in pursuing the same until *he knows* he is in no danger of the execution.

AUDITA QUERELA, to set aside an execution, issued by the clerk of Addison county supreme court.

The complainant alleged, in his complaint, in substance, that in November, 1826, he and one Horace Linsley, then of Cornwall, in the county of Addison, (since removed out of the state,) were duly appointed, by the probate court for the district of Addison, administrators, jointly, of the estate of William Slade, late of said Cornwall, deceased ; that said administrators, on the twenty-ninth day of November, 1831, presented their administration account to said probate court, which was examined by said court, and said court, having examined said account, found a balance remaining in the hands of said Samuel S., of $188,65, being assets in the hands of said administrators, jointly, and due from them to to the estate ; that said court found nothing in the hands of said Linsley, individually ; that, from this decision of the probate court, the said Samuel S. appealed to the Jaunary term of the supreme court, 1832 ; that such proceedings were thereon had, that, at the January term of said supreme court, 1838, it was adjudged, by said supreme court, that the said Samuel S. had a balance of assets in his hands, due to said estate of $62,24, which adjudication of said supreme court should have been certified to said probate court ; that, afterwards, on the 15th of February, 1838, the said Wm. and Norman wrongfully took out a writ of execution on said

judgment, in their favor and against the said Samuel S. and Horace, signed by Samuel Swift, clerk of said supreme court, dated the same 15th day of February, 1838, and made returnable within sixty days from date, and, afterwards, on the fifth day of April, 1838, delivered said execution to a deputy sheriff to be levied and collected. The complainant further alleged, that, at the time of exhibiting his complaint, the said Horace resided out of the state, was out of reach of process, and had no interest in the matter except so far as he might be responsible for the acts of the complainant.

The defendants pleaded not guilty, and a special plea in bar, to which the complainant replied, and the defendants demurred to the replication ; but, as the questions raised in the county court, relating to the pleadings, were not presented by the exceptions, the pleas and arguments of counsel, relating to them, are omitted in reporting the case.

On the trial in the county court, the complainant introduced testimony tending to prove that Samuel Swift, clerk of the supreme court within and for the county of Addison, at the request of defendants' attorney, some time in February, 1838, made out an execution against Samuel S. Phelps and Horace Linsley, administrators of the estate of William Slade, deceased, on a judgment purporting to be a judgment of the supreme court, at its January term, in said county, in 1838, for the amount specified in the complainant's declaration, in due form of law ; but, believing, that an execution could not legally issue against said administrators, on a decree of said court, on appeal from the probate court, for the sum mentioned in complainant's declaration, which was the only judgment against said administrators in said supreme court, resolved not to issue said execution, and, accordingly, placed it in a small desk, not appropriated to such papers ; that he never gave said execution to any one ; that the defendant's attorney took the execution and handed it to a deputy sheriff for the county of Addison, with instructions to collect it, who called on the complainant while the execution had five or six days' life, and informed him that he had such an execution for collection, but did not levy it on either the body or property of the complainant; that the complainant took minutes from the execution, for the purpose of praying out his complaint, and went to Rutland and

procured said writ of *audita querela*; that, when complainant returned from Rutland, with said writ, the execution then being in life, and before the service of his complaint, he was informed, by said Swift, that said execution was made out by mistake, and that he had informed the attorney of the defendants that it should not have gone into the hands of the officer, and that the said attorney had informed him that it should be taken back.

The defendants introduced testimony to prove that the attorney, occupying the same office with the said Swift, applied to him for an execution against the said administrators, if he was entitled to one; that the clerk replied that he was, and would make out one; that said attorney, some days afterwards, in looking for some papers in said desk, found this execution and handed it to the deputy sheriff for service, supposing that the clerk had made out the execution to be issued; that the execution was taken out of the hands of the deputy sheriff before the complainant's writ was delivered to said deputy and that the complainant was informed by the said deputy, when the said complaint was put into his hands, that he had been informed that said execution was not to be levied; that the complainant then instructed said deputy to serve said complaint. The date of said execution was not shown, but no question of variance was raised, it having been understood that the execution issued by the clerk, was well described in the complainant's complaint. The defendant's counsel requested the court to charge the jury, that, if they found that the execution was made out by mistake, and went into the hands of the officer by mistake, without any design on the part of defendants to pursue the complainant wrongfully and fraudulently with it, and that the execution was not issued by the clerk of the court, they would return a verdict for the defendants; that, if they found that the complainant had notice, previous to the service of his complaint upon the defendants, that the execution was either taken out of the hands of the officer and would not be served, or that, if remaining in the hands of the officer, he had been instructed not to levy it, and that it would be taken back and destroyed, they should find for the defendants; that, if they found that, at the date of the service of the complaint, the execution had not been levied upon either the body or prop-

erty of the complainant, and that it was not then in life, they should return a verdict for the defendant.

The court refused so to charge the jury, but instructed them that, from the facts given in evidence, the complainant was entitled to recover nominal damages and his costs, and that it was immaterial whether said writ of execution remained in the hands of the deputy sheriff up to and at the time when the plaintiff's complaint was handed over to him for service, provided it was in force and the complainant in danger of having it levied upon his person or property, at the time of the praying out and allowance of his complaint.

The jury returned a verdict for the complainant, and the defendants excepted to the charge of the county court.

It appeared, from the records of the county court, that the demurrer in the foregoing case was overruled at the December term of that court, 1839.

*E. D. Barber,* for defendants.

*Audita querela* lies, in the nature of a bill in equity, to relieve from the wrongful and oppressive act of the defendant. 3 Bl. Com. 405. 1 Aik. R. 321. 1 Vt. R. 433. 10 Mass. R. 101.

The writ of *audita querela* is known only to the common law, and the cases in which it will lie must be determined by the rules of the common law. 1 Aik. 321, *Staniford v. Barry.* 1 Vt. R. 491, *Dodge v. Hubbell.* 1 Swift's Dig. 789. Stat. vol 1, p. 61. It lies only to stay proceedings, on a judgment rendered by a court of common law jurisdiction. *Garfield v. University of Vermont,* 10 Vt. R. 536.

The declaration, in the present case, sets forth that the proceedings from which the execution complained of resulted, were had on appeal from the probate court for the district of Addison. The supreme court, on appeals from the probate court, sits as a supreme court of probate, and not as a court of common law jurisdiction. *Smith v. Rix,* 9 Vt. R. 240. The proceedings of a probate court are not according to the course of common law. It renders no *judgment,* in the common law sense of that term. Its adjudication is by way of sentence or decree, upon which no execution can issue as in the case of a common law judgment, but which must be certified to the probate court, from which the appeal

was taken, to be there finally settled. It is neither an interlocutory nor final judgment, as at common law. 3 Bl. Com. 312, 325. 1 Swift's Dig. 783. Would *audita querela* lie to set aside an execution issued on a decree of the probate court for the district of Addison? If so, who should sign the writ or allow it as a *supersedeas?* Stat. vol. 1 p. 61. If the statute had provided a supreme court of probate, independent of this court, it manifestly would not be a court whose decrees, or the executions founded upon them, could be interfered with by *audita querela.* 10 Vt. R. above cited. The statute provides, " That in cases proper for issuing an *audita querela,* the same, if *judgment was rendered* in the supreme court, shall be allowed and signed by a judge of the same court ; but if the *judgment was rendered* in the county court, the said writ shall be allowed and signed by two judges of the court last mentioned ;" and "on any *judgment rendered* by a justice of the peace, the writ of *audita querela* shall be allowed by any two judges of the county court of the county in which judgment was rendered." In every case in which this writ can properly issue, there must have been a " *judgment rendered,*" either by the supreme or county court, or by a justice of the peace. The term " *judgment,*" as used in the statute, is used, manifestly, in the common law sense of that term. But was there any such *judgment rendered* in the case at bar? We insist that there was not, and, consequently, *audita querela* will not lie to set aside the execution. *Audita querela* will not lie, according to the authority of the case above cited, in the 10th Vt. R.,to set aside an execution issued on a decree of the court of chancery. If a decree of the supreme court, sitting as a court of chancery, cannot be considered as a *judgment rendered,* within the meaning of the statute, how can a decree of the supreme court sitting as a court of probate, be considered a *judgment* within the meaning of the statute ?

If it be said that unless *audita querela* will lie in such a case as the present, the person aggrieved would be without remedy, it is sufficient to reply, that relief could be had in chancery, or by petition or motion to this court. 9 Vt. R. above cited. *Vadakin* v. *Soper,* 2 Aik. R. 248. If actual damage had been sustained by the levy of the execution, trespass would lie against the creditors in the execution, or

ADDISON,
January,
1841.

Phelps
*v.*
Slades.

an action might have been brought against the clerk. 2 Aik. 248. Or, if he had no other remedy, it does not follow that this writ will lie. 1 Vt. R: 491, above cited.

*Audita querela* will not lie when the matter complained of is an error of the court, or misprision of the clerk. 9 Vt. R. above cited. The ground of this complaint is, that the clerk, without law or right, issued an execution against the complainant and one Linsley.

*J. Pierpoint* and *C. Linsley,* for complainant.

It is sufficient to enable the complainant to maintain his *audita querela,* in this case, to show that the execution was duly made out and signed by the proper authority, and in the hands of the sheriff to be served. It makes but little difference with the defendant in the execution, whether he is committed to jail on an execution issued by mistake or designedly.

If the execution was in life, and the complainant's body or property liable to be taken thereon, at the time of his sueing out his writ of *audita querela,* this is sufficient. *Stone* v. *Seaver,* 5 Vt. R. 553.

The defendants in this case cannot urge that the execution issued by mistake, for the case shows that the execution was designedly made out by the clerk, and that it was designedly given to the officer to be served on the complainant, by the attorney of the defendants. If there was any mistake, it originated in an ignorance of the law on the subject, and we are not aware that the members of the bar are exempt from the operation of the rule, "*ignorantia juris neminem excusat.*"

If any notice to the complainant, in this case, of the withdrawal of the execution, or of an intention not to pursue it, could have availed the defendants, it is very clear that such notice as the case shows could not have that effect. The complainant was not bound to regard what A. or B. might say upon the subject, they having no control over the execution for such purpose.

The complainant having procured his *audita querela* signed, in due form of law, while the excution was in life, and in the hands of an officer authorized to serve it, the defendants could not, by taking back and destroying the execution, de-

feat the complainant's right of recovery, without giving him clear and sufficient notice of the fact, and tendering him his costs.

The suing out of the writ, the law regards as the commencement of the suit. D. Chip. R. 94. 7 Vt. R. 429. And the statute establishes the fees which the complainant is entitled to demand, and they must be paid before he can be compelled to abandon his proceeding.

The opinion of the court was delivered by

COLLAMER, J.—There is no demurrer, nor motion in arrest before us. The appeal on the demurrer to a plea in bar, was, at the last term of this court, dismissed, as prematurely taken, before the trial of the general issue. All that now remains is the exception to the charge. This disposes of several points, taken by the defendants' counsel, to wit, whether the proceedings, in the original case, were by the course of the common law ? Whether there were proper parties to the *audita querela?* Whether the only proper course would have been, to apply to the court to set aside the execution ? In short, all matters arising from the supposed insufficiency of the declaration. For when an issue is taken on a declaration, and the allegations therein are proved, the plaintiff is entitled to a verdict.

The plaintiff proved the allegations in his declaration. He was entitled to a verdict, unless the matter shown by the dedefendants amounted to a defence. This writ was prosecuted to supersede the execution of which the plaintiff was in danger, and which was irregularly issued. His danger was the same, whether it was issued by *mistake* or design. That could only affect the amount of damage, which was nominal in this case. When he was informed that execution was in the sheriff's hands, his danger existed, and he then was well justified in suing out this writ. He was also well justified in giving it out for service, at any time, until *he knew* that danger had passed. The defendants did, indeed, show that the clerk, Mr. Swift, informed the plaintiff, that *he had been informed,* by the attorney,' that the execution would be taken back from the sheriff. This did not inform him that it was done. It also appears that the execution was in fact taken from the sheriff, but no notice of that was given to the Plain-

tiff, before he gave out this writ for service, nor before it was served, though the officer did, indeed, tell him *he had been informed* that the execution was not to be levied, but did not tell him either that it was taken back or any orders given him to stay proceedings thereon. This, then, amounted to no defence.

<div align="right">Judgment affirmed.</div>